<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENOCK TELLUS,<br><br>    Plaintiff,<br><br>    v.<br><br>GOVERNOR PHILIP MURPHY *et al.*,<br><br>    Defendants. | No. 25cv1727 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Enock Tellus ("Tellus"), a prisoner confined in Northern State Prison ("NSP") in Newark, New Jersey brings this Proposed Amended Complaint pursuant to 42 U.S.C. § 1983 and the New Jersey Tort Claims Act ("TCA") N.J. Stat. Ann. § 59:1.1. D.E. 9 ("PAC").[1] On April 4, 2025, the Court granted Tellus's application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a) ("IFP Application"), dismissed his Complaint, D.E. 1 ("Complaint") without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), and granted leave to file a Proposed Amended Complaint ("PAC"). D.Es. 7, 8 (respectively "Opinion" and "Order"). The Court will screen the PAC for *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons explained below, the Court will **PROCEED in part and DISMISS in part** the PAC, and direct the Clerk of Court to file the PAC as the operative Amended Complaint.

---

[1] The caption of the original Complaint named the State of New Jersey as the sole defendant. D.E. 1. The Court has substituted the newly named Defendants in the caption as "Governor Philip Murphy *et al.*"

**I.     BACKGROUND**[2]

Defendants to the PAC are Governor Philip Murphy ("Gov. Murphy"), New Jersey Department of Corrections ("NJDOC") Commissioner Victoria Kuhn ("Kuhn"), Northern State Prison Administrator Mark Sims ("Sims"), and NJDOC (collectively "Defendants"). PAC at 2-6.[3] Tellus attached to his PAC his Initial Notice of Claim for Damages Against the State of New Jersey ("TCA Notice") for alleged inhumane conditions of confinement in NSP housing units, RHU Levels 1, 2, 3, and 4 from 2023-2024. PAC at 15-17. Tellus alleges three wings of the Restorative Housing Unit ("RHU") were closed in January 2025. PAC at 3-6.

Tellus asserts civil rights violations under § 1983, which he groups as five civil rights violations. PAC at 18-21. *First*, Tellus alleges the NSP Administration placed inmates in cells in the RHU, where they were subjected to rain leaking through the ceiling, sewage flooding whenever the toilets were flushed, mold in the cells and showers, and that inmates' recreation time, showers, kiosk use and telephone use[4] were limited to once a month. PAC at 18.[5]

---

[2] The facts in this section derive from the Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of screening the PAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] There are unnumbered pages and nonsequential page numbers on the PAC. Therefore, page citations are to the page number assigned on the docket by the Court's Case Management and Electronic Case Filing System ("CM/ECF") on the top right corner of the page.

[4] The Court does not construe Tellus to allege an Eighth Amendment claim based on limited kiosk and telephone use because it is not apparent how this posed a substantial risk to his health and safety or deprived him of a basic human need. If Tellus intended to assert such a claim, he may raise it in a Second Amended Complaint.

[5] Most allegations in the PAC are stated in terms of the NSP Administration subjecting "inmates" to the conditions alleged, rather than to Tellus specifically. PAC at 18-21. To have standing to assert a claim, a plaintiff must, among other things, "assert his or her own legal interests rather than those of a third party . . . ." *Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (citation modified). The Court construes the PAC to allege Tellus was subjected to

*Second*, Tellus alleges the NSP Administration placed inmates in RHU Level 1 cells without electricity, in an effort to curb inmates from smoking and setting fires. *Id.* The cells are made of concrete and the only opening for airflow is a small food port. *Id.* at 19. Without electricity, inmates could not use fans during the summer. *Id.*

*Third*, Tellus alleges the NSP Administration did not allow inmates on RHU Levels 1 and 2 to have "cooler order ice," which this Court construes to mean block ice for cooling the cells. *Id.* The inmates were also limited to ordering saltine crackers and peanut butter from the commissary. *Id.* They were given contaminated water and were unable to order bottled water from the commissary. *Id.* The food portions were small and sometimes did not include fruit for weeks. *Id.*

*Fourth*, Tellus alleges he suffers from an antisocial personality, and he has developed severe depression and anxiety caused by the conditions of confinement at NSP. *Id.* He requested a single cell due to his mental condition and notified staff he would hurt another person if forced to share a cell. *Id.* at 20. His requests were denied, and every time another person was placed in his cell, Tellus beat him up. *Id.* Staff did not care, so Tellus started refusing to lock-in. *Id.* Because staff could not punish Tellus for refusing a cellmate, they wrote false disciplinary charges, which resulted in Tellus being assigned to the RHU until 2028. *Id.*[6] Tellus suffered a failed suicide

---

each condition alleged during the relevant timeframe. If the Court has misconstrued the PAC, Tellus may file a Second Amended Complaint to assert claims based solely on his own legal interests.

[6] The Court does not construe this allegation as a First Amendment retaliation claim because refusing to lock-in with a cellmate is not a constitutionally protected activity. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (describing elements of First Amendment retaliation claim, including that the plaintiff's conduct was constitutionally protected).

attempt, and then went on a hunger strike, going without food and water for eight days. *Id.* Six inmates committed suicide in the RHU since it opened. *Id.*

*Fifth*, Tellus alleges he has two infected wisdom teeth, and he has been waiting for treatment for four months and was not prescribed an antibiotic. *Id.* at 21. He is now suffering kidney pain, fatigue and feels feverish. *Id.* For relief, Tellus seeks monetary damages.

## II.     LEGAL STANDARD

When a prisoner plaintiff is granted IFP status, the district court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). The legal standard for dismissal under this section is the same as the Rule 12(b)(6) motion to dismiss standard. *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To state a claim under § 1983, a plaintiff must allege the violation of a constitutional right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also allege each defendant's personal involvement in the alleged constitutional violation. *Iqbal*, 556 U.S. at 676. There is no vicarious liability under § 1983. *Id.*

## III.    ANALYSIS

### A.     Sovereign Immunity

The Eleventh Amendment bars suits against state governments, including entities that are arms of the state, brought in federal courts. *Fox v. Bayside State Prison*, 726 F. App'x 865, 867 (3d Cir. 2018). The NJDOC is "quintessentially an arm of the state" subject to Eleventh

4

Amendment immunity. *Id.* at 867-68. "Section 1983 does not abrogate states' immunity . . . [a]nd New Jersey has neither consented to suit nor has it waived its Eleventh Amendment immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) (citation modified). Accordingly, the Court will **DISMISS *with prejudice*** the § 1983 claims against the NJDOC based on immunity from suit.

When state officials are sued in their official capacities they are likewise protected by the Eleventh Amendment. *Fox*, 726 F. App'x at 868. Tellus has not indicated whether his § 1983 claims are brought against Gov. Murphy, Kuhn, and Sims in their official or individual capacities. The Court will construe the PAC to allege the Section 1983 claims against Gov. Murphy, Kuhn, and Sims in their individual capacities because these defendants are immune from § 1983 damages claims in their official capacities.

**B.    Eighth Amendment Conditions of Confinement Claims**

A prison official violates the Eighth Amendment's ban on cruel and unusual punishments in challenges to prison conditions when two requirements are met. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (citation modified). The first requirement is an objectively serious deprivation that denies an inmate the minimal civilized measure of life's necessities, which includes adequate food, clothing, shelter and medical care. *Id.* at 372-73. To state a claim, an inmate must allege his conditions of confinement pose a substantial risk of serious harm. *Id.* at 373. A combination of conditions may establish an Eighth Amendment violation when the conditions have a mutually enforcing effect that deprives the plaintiff "of a single, identifiable human need such as food, warmth, or exercise" or sleep. *Id.* at 373, 374 (citation modified). In this context, the proof necessary is less demanding than the proof needed to show a probable risk of harm. *Id.* at 374.

The second requirement for an Eighth Amendment conditions of confinement claim is that a prison official or employee was deliberately indifferent to inmate health or safety, including the inmate mental health.  *Id.*  To sufficiently allege deliberate indifference, an inmate must allege facts demonstrating the official was "aware of facts from which the inference could be drawn that substantial risk of serious harm exists," and the official also drew such an inference.  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  In other words, inmates must allege "prison officials actually knew of and disregarded constitutional violations . . . [which] tracks the general standard for liability . . . that each defendant was personally involved in the alleged wrongdoing." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020).  "[A] defendant's knowledge of a risk to health and safety can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk."  *Id.* (citation modified).  "Suits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  Supervisory liability may be shown where the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm."  *Id.* (citation modified).  Supervisory liability may also be shown where the supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citation modified).

The Court construes the PAC to allege Tellus was subjected to unconstitutional conditions of confinement in the RHU at NSP between December 2023 and January 2025.[7]  The Court will address the conditions of confinement claims grouped by the deprivations of a basic human need.

                1.      *Deprivation of adequate shelter due to mold, sewage, extreme temperatures, lack of ventilation*

Tellus's allegations of rain leaking into his RHU cell(s), regular sewage floods, mold in the cells and showers, no ventilation in rooms with concrete walls, and no fans or block ice to reduce extreme temperatures in the summer establishes a sufficiently serious deprivation of adequate shelter to meet the first requirement of an Eighth Amendment conditions of confinement claim.  Therefore, the Court turns to the deliberate indifference requirement as to each defendant.  Tellus has not alleged Gov. Murphy or Kuhn, remote supervisory officials who did not work at NSP, had actual knowledge of these conditions in the RHU cells and acquiesced in continuing to subject Tellus to inadequate shelter or that they had a policy, practice or custom that caused Tellus to be subjected to inadequate shelter.  Therefore, the Court will **DISMISS *without prejudice*** the Eighth Amendment inadequate shelter claims against Gov. Murphy and Kuhn for failure to state a claim.

With respect to Sims, however, as the Administrator of NSP, the risk to Telllus's health resulting from inadequate shelter may ultimately be proven to be "so obvious" that Sims must have known of the risk.  *See Thomas*, 948 F.3d at 138.  Accordingly, the Eighth Amendment inadequate shelter claim against Sims **MAY PROCEED**.

---

[7] In his Tort Claims Notice, Tellus alleged these conditions existed in RHU Levels 1-4 since the housing units opened in December 2023.  *See* Tort Claims Notice at 16.

### 2. *Deprivation of adequate food and water*

Tellus's allegations of contaminated drinking water, inadequate quantities of food, and inability to buy food and bottled water from the commissary are too vague to establish an Eighth Amendment claim. Tellus has not alleged what the drinking water is contaminated with, how the drinking water poses a substantial risk to his health, or how Gov. Murphy, Kuhn, or Sims were deliberately indifferent to a substantial risk to his health from drinking contaminated water. *See e.g.*, *Quinn v. Tritt*, No. 18-632, 2019 WL 517631, at *5 (M.D. Pa. Jan. 7, 2019), *report and recommendation adopted*, No. 18-632, 2019 WL 365741 (M.D. Pa. Jan. 30, 2019). Furthermore, Tellus has not sufficiently described the prison diet, in quantity or quality, to establish that it poses a substantial risk to his health, or that Gov. Murphy, Kuhn, or Sims were deliberately indifferent to such risk. *See, e,g.*, *Skelton v. Branganza*, No. 19-18597, 2024 WL 939688, at *8 (D.N.J. Mar. 4, 2024) (dismissing inadequate prison diet claim where the plaintiff failed to allege how the defendants had knowledge of and acquiesced in providing a diet inadequate to sustain normal health). Therefore, the Court will **DISMISS** *without prejudice* the Eighth Amendment inadequate food and water claims against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

### 3. *Deprivation of adequate exercise*

"While the denial of exercise or recreation in some circumstances may result in a violation of the Eighth Amendment . . . a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (citation modified). Tellus alleges only that he was permitted outdoor recreation only once a month. He does not allege he had no opportunity for indoor exercise or that lack of exercise affected his health. Therefore, the Court will **DISMISS** *without prejudice* the Eighth Amendment inadequate exercise claims against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

*4.     Inadequate medical care*

Tellus asserts his inadequate medical care claims, delay in treatment of his infected wisdom teeth and failure to prescribe antibiotics, solely against non-medical prison officials. The Third Circuit has held "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . Eighth Amendment . . . deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Tellus has not alleged any facts creating a reasonable inference that Gov. Murphy, Kuhn, or Sims had reason to believe or actual knowledge of the delay in providing adequate treatment for his infected wisdom teeth. Therefore, the Court will **DISMISS** *without prejudice* the Eighth Amendment inadequate medical care claims against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

*5.     Deliberate indifference to mental health*

The Court construes the PAC to allege deliberate indifference to Tellus's mental health, his antisocial personality, depression and anxiety, by forcing him to share a cell. Tellus has not alleged any facts creating a reasonable inference that Gov. Murphy, Kuhn, or Sims had reason to believe or actual knowledge that denial his requests for a single cell would pose a substantial risk to his mental health. Therefore, the Court will **DISMISS** *without prejudice* the Eighth Amendment claims for deliberate indifference to Tellus's mental health against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

**C.     First Amendment Interference With Incoming Mail**

Tellus alleges the NSP Administration opened and copied all RHU inmates' incoming mail to somehow prevent inmates from smoking and setting fires. Tellus did not specify that his *legal* mail was opened and copied. The Court construes the PAC to allege only that his personal mail

was opened and copied. The Third Circuit applies the Supreme Court's four-part test from *Turner v. Safely*, 482 U.S. 78 (1987), to claims regarding interference with prisoners' incoming mail. *Nasir v. Morgan*, 350 F.3d 366, 369, 372 (3d Cir. 2003) (defining the First Amendment right as the right to communicate with individuals outside the prison). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 370 (citation modified).

Tellus has not pled sufficient facts for this Court to determine whether opening and copying his incoming mail was reasonably related to an effort to prevent inmates in the RHU from smoking and setting fires. Therefore, the Court will **DISMISS *without prejudice*** the First Amendment claims for interference with incoming mail against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

D. **State Law Claims – Intentional Infliction of Emotional Distress**

Under New Jersey law, a claim for intentional infliction of emotional distress ("IIED") requires extreme and outrageous conduct that was intentional or reckless and caused severe emotional distress. *Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 323 (D.N.J. 2021) (citations omitted). Extreme and outrageous conduct "must go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Tellus does not describe any outrageous conduct by Gov. Murphy, Kuhn, or Sims that rises to the required level of "extreme and outrageous" or was committed intentionally or recklessly.[8] The

---

[8] The Court does not construe the PAC to allege a claim of IIED against NJDOC. Even if the Court construed such a claim, it would be dismissed because under the TCA "there can be no vicarious liability by a public entity for intentional torts committed by its employees." *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 306 (D.N.J. 2015).

Court will therefore **DISMISS** *without prejudice* Plaintiff's IIED claims under New Jersey law against Gov. Murphy, Kuhn, and Sims for failure to state a claim.

IV. **CONCLUSION**

For the reasons stated above, the Court will: (1) **DISMISS** *with prejudice* the § 1983 claims against the NJDOC; (2) **DISMISS** *without prejudice* the Eighth Amendment claims of inadequate shelter against Gov. Murphy and Kuhn; (2) **PROCEED** the Eighth Amendment claims of inadequate shelter against Sims; (3) **DISMISS** *without prejudice* the Eighth Amendment claims of inadequate food and water against Gov. Murphy, Kuhn, and Sims; (4) **DISMISS** *without prejudice* the Eighth Amendment claims of inadequate exercise against Gov. Murphy, Kuhn, and Sims; (5) **DISMISS** *without prejudice* the Eighth Amendment claims of inadequate medical care against Gov. Murphy, Kuhn, and Sims; (6) **DISMISS** *without prejudice* the Eighth Amendment claims for deliberate indifference to his mental health against Gov. Murphy, Kuhn, and Sims; (7) **DISMISS** *without prejudice* the First Amendment claims for interference with incoming mail against Gov. Murphy, Kuhn, and Sims; (8) **DISMISS** *without prejudice* Plaintiff's IIED claims under New Jersey law against Gov. Murphy, Kuhn, and Sims. An appropriate Order accompanies this Opinion.

Dated: December 22, 2025

_____
Evelyn Padin, U.S.D.J.